IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| SUSAN LAKICS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No:  09 cv 6929 |
| | ) | |
| v. | ) | Judge Joan H. Lefkow |
| | ) | |
| COUNTY of DUPAGE and | ) | Mag. Judge Valdez |
| JOHN ZARUBA, in his official capacity | ) | |
| as DuPage County Sheriff, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Now Come the Defendants, the COUNTY OF DUPAGE and JOHN ZARUBA, in his official capacity as DuPage County Sheriff (hereinafter "Defendants"), by and through their attorney, Robert B. Berlin, DuPage County State's Attorney, and his assistants, Paul F. Bruckner and William R. Roberts, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully move this Court to enter summary judgment in their favor and against Plaintiff on Plaintiff's Complaint.  In support thereof Defendants have submitted a Motion for Summary Judgment and a Rule 56.1(a)(3) Statement of Uncontested Facts, and further state as follows:

## THE STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

Summary Judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  A genuine issue as to any material fact exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## BACKGROUND

On November 4, 2009, Plaintiff filed her Complaint naming "DuPage County Sheriff's Department" as the defendant. A Motion to Dismiss was filed asserting that "DuPage County Sheriff's Department" is not a legal, sueable entity and the action should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the basis that the named 'party' was a non-existent entity. On January 14, 2010, Plaintiff made an oral motion to substitute defendant on the basis of misnomer. Over objection, Plaintiff's motion was granted. The "DuPage County Sheriff's Department" was removed as defendant, and County of DuPage and John Zaruba, in his official capacity as DuPage County Sheriff, were substituted as defendants.

Plaintiff's four count Complaint asserts three counts under Title VII based upon gender and retaliation, and a §1983 count asserting violation of right of freedom of association. Plaintiff claims that as a result of her gender, and her political association, she was 'passed over' for promotions within the DuPage County Sheriff's Office. Defendants filed an Answer and Affirmative Defenses, denying any discrimination or retaliation, denying any violation of freedom of association, denying that the Plaintiff was employed by the COUNTY OF DUPAGE, denying that Plaintiff had filed timely charges against the Defendants with the Equal Employment Opportunity Commission, asserting that Plaintiff failed to timely file her Complaint against the Defendants, and denying that punitive damages are available to Plaintiff from the Defendants.

Plaintiff was hired by the DuPage County Sheriff as a civilian booking officer in May, 1996. (SUF 1). Plaintiff tested with the DuPage County Sheriff's Merit Commission[1] to become

---

[1] The DuPage County Sheriff's Merit Commission is a 3 member board established pursuant to the Sheriff's Merit System Law, 55 ILCS 5/3-8001 *et seq.* The Merit Commission has "the duties, pursuant to recognized merit principles of public employment, of certification for employment and promotion…". (§5/3-8007). The Merit Commission conducts investigations and examinations and as to those applicants it deems qualified, certifies that

a deputy sheriff and was hired as a deputy sheriff by DuPage County Sheriff Doria in 1997. (SUF 2). In approximately December 1998, while working as a deputy sheriff in the booking office, Plaintiff received training for a position within the secure area of the jail. (SUF 3).

Plaintiff's training in the jail lasted approximately one month. (SUF 4). During that month of training, she was transferred from second watch (3 pm to 11:30 pm) to third watch (11 pm to 7:30 am). (SUF 4). After the month of training, Plaintiff was transferred back to second watch as a deputy within the jail. (SUF 4).

At some point in 2002, Plaintiff submitted a letter of intent, indicating her desire to transfer from the jail to the patrol division (corrections bureau to the law enforcement bureau). (SUF 5). The Sheriff sent Plaintiff to the Suburban Law Enforcement Academy (SLEA) in April 2002 to receive training to become certified as a law enforcement deputy. (SUF 5). Not every deputy receives SLEA training. (SUF 5). The Sheriff has to approve transfers from corrections division to law enforcement division (SUF 5). At some point in 2003, Plaintiff was offered a transfer from the corrections bureau to the patrol division. (SUF 6).Plaintiff declined that transfer to patrol division (SUF 6), and continued to work as a deputy sheriff assigned to the second shift in the jail. (SUF 6).

Plaintiff claims that "between 1997 and the present, Plaintiff was refused various promotions, including promotions to corporal and sergeant positions. As a result, Plaintiff worked in the same position from 1997 through October 2009." (Complaint ¶12).

Contrary to that allegation, during her employment in the jail, Plaintiff held various positions, including:

    a.    Field Training Officer (training new recruits in the jail);

---

said applicants are qualified for appointment (§5/3-8010). "The Sheriff shall make appointments from those persons certified by the Commission as qualified for appointment."(§5/3-8010). The Sheriff can appoint anyone from the certification list, regardless of their position on the list.

b.    Acting sergeant (Plaintiff testified that a female sergeant had died and Plaintiff may have been replacing her);and,

c.    Corporal. (SUF 8).

From 2008 into 2009, for approximately one year, Plaintiff was a corporal in the jail (SUF 9). A Corporal position is not a Merit Commission rank[2], but is an assignment (SUF 9). While Plaintiff was a corporal in the jail, Plaintiff submitted a letter of interest for transfer to a night transport position (SUF 10). The transfer Plaintiff voluntarily sought was from a corporal position in the jail, to a deputy position in night transport (SUF 10).

At some point in 2008, Plaintiff submitted another letter of intent indicating her desire to transfer to the patrol division. (SUF 11). Plaintiff was offered, and accepted, a transfer to the patrol division (SUF 11). The Sheriff has to approve transfers from corrections division to law enforcement division (SUF 11). Plaintiff is currently employed by the DuPage County Sheriff as a DuPage County Deputy Sheriff assigned to the patrol division. (SUF 11).

Contrary to Plaintiff's contention that she was 'refused" assignments to corporal, Plaintiff admits that she does not know if her name was ever submitted for an appointment to corporal. (SUF 12). Plaintiff never submitted any memo seeking an appointment to a corporal assignment (SUF 12). Plaintiff admits that at one point in time, she "wasn't real interested" in becoming a corporal (SUF 12). The Sheriff does not remember receiving any recommendations regarding Plaintiff for promotions or assignments within the Corrections Bureau (SUF 13).

In opposition to Plaintiff's claim of gender discrimination, Plaintiff testified that she recalled that one of the corporal appointments which Plaintiff claims to have been 'refused' was

---

[2] There are three Merit Commission ranks, specifically: deputy, sergeant, and lieutenant. A 'promotion' would entail movement from deputy to sergeant, or from sergeant to lieutenant. (55 ILCS 5/3-8011). Movement from deputy to corporal is not a 'promotion'.

given to a female deputy, Denise Orsini. (SUF 14). She did not recall the names of all the deputies she claims got a corporal appointment that she alleges she was 'refused' (SUF 14). Plaintiff claims that her male counterparts were given training opportunities which she was not given (Complaint ¶18-19); however, Plaintiff admits that she does not know what classes those male counterparts took that she claims she was not able to take (SUF 15).

In 2002, 2004, 2006, and 2008, Plaintiff took the DuPage County Merit Commission promotional examination seeking to be certified as eligible for promotion to sergeant in the Corrections Bureau[3] (SUF 16). Subsequent to the testing, the Merit Commission provides the Sheriff with a list of individuals who are eligible for promotion to Sergeant for Corrections Bureau (SUF 17). Each list is valid for two years, at which time another test is given, and another list developed (SUF 17). The Merit Commission lists are in 'rank order' (SUF 17). The Sheriff is not provided with scores, just the 'rank order' (SUF 17). The Sheriff can choose to promote anyone from the certified list, regardless of their 'rank order" (SUF 17).

For the 2004 promotional lists for sergeant, the Merit Commission ranked the candidates by combining 60% of the exam score with 40% of the most recent performance evaluation score for each individual (SUF 18). Individuals whose combined score met or exceeded a certain threshold were certified as eligible for promotion (SUF 18).

For the 2008 promotional lists for sergeant, the Merit Commission ranked the candidates by combining 40% of the exam score with 60% of the most recent performance evaluation score for each individual (SUF 19). Individuals whose combined score exceeded a certain threshold were certified as eligible for promotion (SUF 19).

---

[3] 55 ILCS 5/3-8011 provides: "Certification for promotion. Whenever a position in a higher rank is to be filled, the Merit Commission shall certify to the sheriff the names of eligible persons who stand highest upon the promotional register for the rank to which the position belongs. ... The sheriff shall appoint from those whose names were

In 2002, 2004, and 2008, the Merit Commission certified Plaintiff as eligible for promotion, specifically; in 2002 and 2004 she was ranked in approximately the middle of the lists of those individuals who were certified as eligible for promotion in corrections, and in 2008, she was ranked 13th on the list (SUF 20).

For the 2006 promotional lists for sergeant, the Merit Commission ranked the candidates by exam score alone (without factoring in any performance evaluation scores) (SUF 21). Individuals who scored 70 or above were certified as eligible for promotion (SUF 21). In 2006, the DuPage County Merit Commission, pursuant to the different scoring system using only exam scores without performance evaluations, certified Plaintiff as eligible for promotion, specifically, she was ranked 6th out of a total of 8 who were certified as eligible for promotion (SUF 22).

With regard to the 2006 promotional list for sergeant in corrections, the rank order and corresponding exam scores were:

- 1. Stuckey, Brian -79;
- 2. Marcell, Donald - 77;
- 3. Allen, Jennifer – 75;
- 4. Putnam, John – 73;
- 5. Vandermolen, Gary – 72;
- 6. Lakics, Susan – 71;
- 7. Bain, Scott – 70;
- 8. Prendergast, Thomas – 70.

The Sheriff is not provided with the exam scores, just the 'rank order' (SUF 23).

Typically, when considering a promotion, the Sheriff would consider the skills knowledge and ability of the persons being considered, with the intent to put the most skilled, knowledgeable and able person in the sergeant position (SUF 24). Because the Merit Commission did not consider performance evaluation scores relative to the 2006 list, the Sheriff

---

certified. … All vacancies in all ranks of deputy sheriff above the lowest shall be filled by promotion, …" The Sheriff can promote anyone from the certification list, regardless of their position on the list.

may have considered the most recent performance evaluation scores when making his selections from the 2006 promotional list (SUF 26). With regard to the candidates on the 2006 promotional list for sergeant in corrections, their performance evaluation scores were:

- 1. Stuckey, Brian -80;
- 2. Marcell, Donald - 73;
- 3. Allen, Jennifer – 70;
- 4. Putnam, John – 63;
- 5. Vandermolen, Gary – 67;
- 6. Lakics, Susan – 77;
- 7. Bain, Scott – 81;
- 8. Prendergast, Thomas – 68. (SUF 26).
-

When a promotional list is issued for sergeant promotions, the Sheriff can chose anyone from the list, regardless of where the person is ranked on the list (SUF 27). Plaintiff testified that common practice was to promote the person at the top of the list first; there was no pattern as to the remaining promotions from the list (SUF 27).

Plaintiff claims that a copy of the 2006 promotional list for sergeant in corrections was posted on a board over one of the desks in the Sergeants' Office in the Jail (SUF 28). Plaintiff claims that as an individual was promoted from the list, a line was placed through that individual's name on the list (SUF 28). Plaintiff does not know who 'crossed off' the names (SUF 28).

Corporal Brian Stuckey was promoted effective January 8, 2007 (SUF 29). Corporal Donald Marcell was offered a promotion but declined the offer (SUF 29). In contrast to Plaintiff's allegations as to gender discrimination, a female deputy, Deputy Jennifer Allen was promoted effective April 23, 2007 (SUF 29). Deputy John Putnam was promoted June 4, 2007 (SUF 29). Corporal Gary Vandermolen was promoted October 29, 2007, and shortly thereafter requested that his promotion be rescinded (SUF 29). In direct contradiction to her claim that 'lesser qualified' candidates were promoted to positions for which she was eligible; Plaintiff

testified that both Stuckey and Allen were qualified to be sergeants at the time they were promoted and Plaintiff has no opinion as to whether or not Vandermolen was qualified to be a sergeant when he was offered the promotion (SUF 29).

Deputy Scott Bain was offered a promotion on November 16, 2007, to become effective on December 11, 2007 (SUF 30). The two remaining candidates, Plaintiff and Prendergast remained eligible for promotion to sergeant until the expiration of the list, specifically, when the 2008 list was issued (SUF 30). In direct contradiction to her claim that 'lesser qualified' candidates were promoted to positions for which she was eligible; Plaintiff testified that at the time Bain was promoted, Plaintiff does not know whether Bain was qualified to be a sergeant or not (SUF 30). In contradiction to her allegation of gender discrimination, Plaintiff testified that between the time Scott Bain received a promotion, and the time of Plaintiff's deposition, Plaintiff knows of one other person promoted to sergeant in corrections, specifically, a female, Melissa Gustafson (SUF 34).

Plaintiff claims that at some point in time after Bain was promoted; Plaintiff noticed that on the list allegedly posted in the Sergeant's office, Bain's name had been crossed off the list (SUF 31). Plaintiff also claims that at that time, her name was also crossed off the list and "DOA" had been written next to her name (SUF 31). Plaintiff does not know who crossed off the names or wrote on the list (SUF 3). Plaintiff is uncertain how long the list with her name crossed off and "DOA" written on it was hanging in the Sergeant's office (SUF 32). She testified that the list was hanging with "DOA" on it for "a couple of days" (SUF 32). Plaintiff is not certain whether she asked any supervisor to remove the list (SUF 32). After the list had been up for a couple of days, Plaintiff removed the list (SUF 32).

The Sheriff had never seen the 2006 list with names crossed off, or with DOA written on it, until sometime after the Plaintiff's lawsuit was filed (SUF 33). The Sheriff does not even know if the list existed in it's marked up form in 2007 (SUF 33). Plaintiff never brought the marked up list to the attention of the Sheriff (SUF 33).

Plaintiff claims that she was 'passed over' for promotion on the 2006 list, testifying that she believed that the reason for being 'passed over' "was political, other than that I have no explanation why" (SUF 36). Plaintiff alleges (Complaint ¶45) and Defendants deny (answer ¶45) that "[i]n 1998, a political fallout occurred between Plaintiff's husband, the Mayor of West Chicago and John Zaruba, the DuPage County Sheriff" regarding the Sheriff's opening of a 'boot camp' or "SWAP camp) in West Chicago (SUF 37). Plaintiff alleges, and Defendants deny, that there was a delay in the opening of the camp and that the Sheriff was upset about the alleged delay (SUF 37). There was no delay in the opening of the Sheriff's camp in West Chicago (SUF 37).

Plaintiff's husband was Mayor of West Chicago from 1993 through 2001 (SUF 38). Plaintiff "stayed away from city business" (SUF 38). Despite Plaintiff's allegation that she was politically involve in her husband's campaign and tenure as mayor (Complaint ¶50), Plaintiff testifies that she tried to stay far out of politics and West Chicago business (SUF 38). Plaintiff's husband never had a conversation with the Sheriff about the camp (SUF 39). Plaintiff's husband never had any conversations with the Sheriff about Plaintiff or Plaintiff's assignments (SUF 39). Plaintiff's husband never received any correspondence from the Sheriff about the camp (SUF 39). Plaintiff's husband doesn't know if he spoke to any Sheriff's representatives about the camp (SUF 39). Plaintiff's husband does not know if the Sheriff was upset or not regarding the

camp (SUF 39). Plaintiff has never had a conversation with the Sheriff about the camp (SUF 39).

The Sheriff did not have any dealings with Plaintiff's husband when Plaintiff's husband was Mayor of West Chicago (SUF 40). The Sheriff did not have any interaction with the Mayor of West Chicago relative to his work camp (SUF 40).

Plaintiff never made any complaints to the County of DuPage regarding her supervisors, never spoke to anyone at the County of DuPage regarding the allegations of her complaint, and never made any complaints regarding the County of DuPage's employees (SUF 41). Plaintiff can not identify any wrongful acts by the County of DuPage (SUF 41).

**A.** **The County of DuPage Does Not Employ Plaintiff and the Plaintiff Can Not Identify Any Wrongful Acts By the County of DuPage**

On January 14, 2010, Plaintiff made an oral motion to substitute defendant on the basis of misnomer. Over objection, Plaintiff's motion was granted. Pursuant to the Court's January 14, 2010 order, the "DuPage County Sheriff's Department" was removed as defendant, and the County of DuPage and John Zaruba, in his official capacity as DuPage County Sheriff, were substituted as defendants. Defendant County presumes the Court added the County "because state law requires the county to pay, federal law deems it an indispensable party to the litigation." *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003).

Defendant, County of DuPage, maintains that the 7th Circuit Court's holding in *Carver v. Sheriff of LaSalle County*, 203 Ill.2d 497 (2003) does not make the County liable. Simply because "the county is required to pay a judgment" does not make a county liable for the actions of those it does not control and, *to the degree Plaintiff seeks to hold the County liable* for any alleged actions of the Sheriff, the County of DuPage is entitled to summary judgment.

A county's *respondeat superior* liability extends only to county employees and not to independent county officers, and although sheriffs are county officers, they are not employees of the county for *respondeat superior* liability purposes. *Moy v. County of Cook*, 159 Ill.2d 519, 203 Ill.Dec. 776, 640 N.E.2d 926,930 (Ill. 1994). Rather, sheriffs are independently elected officials not subject to the control of the county. *Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir. 1989). The County of DuPage has no control over the Sheriff in the internal operations of the Sheriff's Office (55 ILCS 5/3-6018), nor does the County have control over the employees of the Sheriff of DuPage County. Plaintiff is an employee of the Sheriff of DuPage County (SUF 1-2); the County of DuPage does not employ Plaintiff. The County of DuPage does not have control over the Plaintiff.

Further, the Plaintiff has admitted that Plaintiff never made any complaints to the County of DuPage regarding her supervisors, never spoke to anyone at the County of DuPage regarding the allegations of her complaint, and never made any complaints regarding the County of DuPage's employees (SUF 41). Plaintiff further admitted that she can not identify any wrongful acts by the County of DuPage (SUF 41).

WHEREFORE, for the foregoing reasons, for the reasons set forth in Defendants' Motion for Summary Judgment, and based upon the facts presented in Defendants' Rule 56.1(a)(3) Statement of Uncontested Facts, the Defendant, THE COUNTY OF DUPAGE, respectfully requests this Court to enter summary judgment in its favor and against Plaintiff on all Counts of Plaintiff's Complaint.

**B.** **Punitive Damages Are Not Available Against the Defendants, the County of DuPage and the Sheriff of DuPage County, In His Official Capacity**

In Counts I, II, and III, Plaintiff seeks punitive damages against Defendants. Local governmental entities, including the Defendants, the County of DuPage and the Sheriff of

DuPage County, in his official capacity, are immune from punitive damages. *City of Newport v. Fact Concepts,* 453 U.S. 247 (1981). Accordingly, any request for punitive damages against the Defendants must be dismissed and summary judgment should be granted, as a matter of law, in Defendants' favor, and against Plaintiff, as to any claims for punitive damages.

Further, even assuming, *arguendo,* that the County of DuPage was not immune from punitive damages, Plaintiff has presented absolutely no basis for an assessment of punitive damages against the County of DuPage. The Plaintiff has admitted that Plaintiff never made any complaints to the County of DuPage regarding her supervisors, never spoke to anyone at the County of DuPage regarding the allegations of her complaint, and never made any complaints regarding the County of DuPage's employees (SUF 41). Plaintiff further admitted that she can not identify any wrongful acts by the County of DuPage (SUF 41).

WHEREFORE, for the foregoing reasons, for the reasons set forth in Defendants' Motion for Summary Judgment, and based upon the facts presented in Defendants' Rule 56.1(a)(3) Statement of Uncontested Facts, the Defendants, THE COUNTY OF DUPAGE and JOHN ZARUBA, in his official capacity as DuPage County Sheriff, respectfully request this Court to enter summary judgment in their favor and against Plaintiff as to any claims for punitive damages.

## C. There Is No Evidence of Gender Discrimination, Hostile Work Environment, or Retaliation, Accordingly, Sheriff Zaruba Is Entitled To Judgment as a Matter of Law

In Counts I, II, and III, Plaintiff claims that she was discriminated against, or retaliated, against due to her gender. Plaintiff alleges that she was denied the opportunity to take classes that male deputies were allowed to take. Plaintiff alleges that she was 'passed over' for promotion and that 'lesser qualified' male employees were promoted. Plaintiff alleges that she

was retaliated against for making complaints. However, Plaintiff has failed to present any material facts which would establish discrimination or retaliation based upon gender. In addition, as argued previously, with regard to any claim against Defendant, the County of DuPage, Plaintiff admitted that she can not identify any wrongful acts by the County of DuPage (SUF 41).

As an alleged basis for her gender discrimination claims, Plaintiff alleges in paragraphs 18 and 19 of her Complaint that she was "refused the opportunity to partake in certain classes" and that her "male counterparts were …given opportunities to take classes that Plaintiff was not given."

With regard to her allegation that she was "refused the opportunity to partake in certain classes", the evidence establishes that Plaintiff was actually given opportunities to partake, and did partake, in classes which are not offered to all deputies. Specifically, the Sheriff sent Plaintiff to the Suburban Law Enforcement Academy (SLEA) in April 2002 to receive training to become certified as a law enforcement deputy. (SUF 5). Not every deputy receives SLEA training. (SUF 5). Plaintiff's allegation is not supported by the facts, and must fail.

With regard to her allegation her "male counterparts were …given opportunities to take classes that Plaintiff was not given", Plaintiff admits that she does not know what classes her male counterparts took that she claims she was not able to take (SUF 15). Plaintiff's allegation is apparently based upon speculation and conjecture. Plaintiff's allegation is not supported by any facts, and must fail.

As another alleged basis for her gender discrimination claims, Plaintiff alleges that, due to her gender, she was 'passed over' for promotion and that 'lesser qualified' male employees were promoted. Specifically, Plaintiff complains that Scott Bain was promoted ahead of her

from the 2006 promotional list for sergeant in corrections. On the 2006 promotional list for sergeants in corrections, Plaintiff was the 6th name out of 8, and Scott Bain was the 7th name out of 8. Plaintiff apparently asserts in her complaint that Scott Bain was a 'lesser qualified' male employee. Once again, Plaintiff's allegations are not supported by her own testimony, or by the facts, and must fail.

In direct contradiction to her claim that Scott Bain was a 'lesser qualified' candidates who was promoted to a position for which she was eligible; Plaintiff testified that at the time Bain was promoted, Plaintiff does not know whether Bain was qualified to be a sergeant or not (SUF 30). Further, the undisputed facts establish that Scott Bain was not a 'lesser qualified" candidate.

With regard to the 2006 promotional lists for sergeant, the Merit Commission ranked the candidates by exam score alone (without factoring in any performance evaluation scores) (SUF 21). Individuals who scored 70 or above were certified as eligible for promotion (SUF 21). The Plaintiff's and Bain's rank order and corresponding exam scores for the 2006 promotional list for sergeant in corrections were:

- 6. Lakics, Susan – 71;
- 7. Bain, Scott – 70;

The Sheriff is not provided with the exam scores, just the 'rank order' (SUF 23). When a promotional list is issued for sergeant promotions, the Sheriff can chose anyone from the list, regardless of where the person is ranked on the list (SUF 27). The only information the Sheriff had from the list was that Plaintiff was ranked 6 and Bain 7. The Sheriff would not know that Plaintiff scored a 71 or that Bain scored a 70.

Typically, when considering a promotion, the Sheriff would consider the skills knowledge and ability of the persons being considered, with the intent to put the most skilled,

knowledgeable and able person in the sergeant position (SUF 24). Because the Merit Commission did not consider performance evaluation scores relative to the 2006 list, the Sheriff may have considered the most recent performance evaluation scores when making his selections from the 2006 promotional list (SUF 26). With regard to Plaintiff and Bain, their performance evaluation scores were:

- 6. Lakics, Susan – 77;
- 7. Bain, Scott – 81;

Had the Merit Commission utilized the formula they had intended to use in 2006 (1/3 exam score, 1/3 performance evaluation, and 1/3 assessment center), equal weight would have been given to each of the three factors. Giving equal weight to the exam score and the performance evaluation would have ranked Bain ((70 + 81)/2 = 75.5) ahead of Plaintiff ((71+ 77)/2 = 74). Had the Merit Commission utilized the formula from 2004, Bain (74.4) would have ranked ahead of Plaintiff (73.4). However, the only concrete numbers the Sheriff had were the performance evaluation scores, Plaintiff (77) and Bain (81). Clearly, the facts fail to support Plaintiff's implication that Bain was a 'lesser qualified' candidate.

As part of her discrimination and retaliation claim, Plaintiff alleges at paragraph 12 claims that "between 1997 and the present, Plaintiff was refused various promotions, including promotions to corporal and sergeant positions. As a result, Plaintiff worked in the same position from 1997 through October 2009." The undisputed facts establish that Plaintiff's allegations in paragraph 12 are false.

Contrary to the allegations in paragraph 12, during her employment in the jail, Plaintiff held various positions, including:

    d.    Field Training Officer (training new recruits in the jail);

e.     Acting sergeant (Plaintiff testified that a female sergeant had died and Plaintiff may have been replacing her);and,

f.     Corporal. (SUF 8).

From 2008 into 2009, for approximately one year, Plaintiff was a corporal in the jail (SUF 9). A Corporal position is not a Merit Commission rank, but is an assignment (SUF 9). While Plaintiff was a corporal in the jail, Plaintiff submitted a letter of interest for transfer to a night transport position (SUF 10). The transfer Plaintiff voluntarily sought was from a corporal position in the jail, to a deputy position in night transport (SUF 10). At some point in 2008, Plaintiff submitted another letter of intent indicating her desire to transfer to the patrol division. (SUF 11). Plaintiff was offered, and accepted, a transfer to the patrol division (SUF 11). Plaintiff is currently employed by the DuPage County Sheriff as a DuPage County Deputy Sheriff assigned to the patrol division. (SUF 11).

Clearly, the Plaintiff has not been "refused" a corporal position, she was a corporal for approximately one year, until she voluntarily requested to give up the corporal assignment. Equally clear is that Plaintiff has not worked in the same position from 1997 through October 2009, but has been offered and given various assignments pursuant to her request. The undisputed facts establish that Plaintiff's allegations are false.

With regard to Plaintiff's contention that she was "refused" other appointments to a corporal position, once again, Plaintiff's testimony and the facts fail to establish that she was "refused" a corporal position. Specifically, Plaintiff admits that she does not know if her name was ever submitted for an appointment to corporal. (SUF 12). Plaintiff never submitted any memo seeking an appointment to a corporal assignment (SUF 12). Plaintiff admits that at one point in time, she "wasn't real interested" in becoming a corporal (SUF 12). Further, the Sheriff does not remember receiving any recommendations regarding Plaintiff for promotions or

assignments within the Corrections Bureau (SUF 13). Clearly, Plaintiff's allegations of being "refused" a corporal position are not supported by the facts, and must fail. In addition, in opposition to Plaintiff's claim that she was 'refused' a corporal position due to her gender, Plaintiff testified that she recalled that one of the corporal appointments which Plaintiff claims to have been 'refused' was given to a female deputy, Denise Orsini. (SUF 14). She did not recall the names of all the deputies she claims got a corporal appointment that she alleges she was 'refused' (SUF 14).

Plaintiff also alleges that she was subjected to harassment and comments from co-workers and supervisors after being "repeatedly refused promotions". First, it has already been established that Plaintiff was not "repeatedly refused promotions". Second, an examination of Plaintiff's deposition testimony establishes that Plaintiff can give no specifics regarding any alleged harassment. Despite repeated questioning, Plaintiffs testimony is virtually devoid of any specifics as to who, what, when or where regarding any alleged harassment. Plaintiff's testimony is virtually devoid of any specifics as to Plaintiff having reported any alleged harassment to her supervisors. Plaintiffs testimony is virtually devoid of any specifics as to who, what, when or where regarding any reporting of any alleged harassment. However, Plaintiff does admit that she has never had any conversation with John Zaruba, Sheriff of DuPage County.

Plaintiff also alleges that she was subjected to harassment regarding a copy of the 2006 promotional list wherein Plaintiff claims her name was crossed off and Plaintiff claims that "DOA was written next to her name (Complaint ¶15). Plaintiff claims that at some point in time after Bain was promoted; Plaintiff noticed that on the list allegedly posted in the Sergeant's office, Bain's name had been crossed off the list (SUF 31). Plaintiff also claims that at that time, her name was also crossed off the list and "DOA" had been written next to her name (SUF 31).

Plaintiff does not know who crossed off the names or wrote on the list (SUF 3). Plaintiff is uncertain how long the list with her name crossed off and "DOA" written on it was hanging in the Sergeant's office (SUF 32). She testified that the list was hanging with "DOA" on it for "a couple of days" (SUF 32). Plaintiff is not certain whether she asked any supervisor to remove the list (SUF 32). After the list had been up for a couple of days, Plaintiff removed the list (SUF 32). Once again, an examination of Plaintiff's deposition testimony establishes that Plaintiff can give no specifics regarding the alleged harassment. Despite repeated questioning, Plaintiffs testimony is virtually devoid of any specifics as to who, what, when or where regarding any alleged harassment. Plaintiff's testimony is virtually devoid of any specifics as to Plaintiff having reported any alleged harassment to her supervisors. Plaintiffs testimony is virtually devoid of any specifics as to who, what, when or where regarding any reporting of any alleged harassment. However, Plaintiff does admit that she has never had any conversation with John Zaruba, Sheriff of DuPage County.

Further, John Zaruba, Sheriff of DuPage County, testified that he had never seen the 2006 list with names crossed off, or with DOA written on it, until sometime after the Plaintiff's lawsuit was filed (SUF 33). Plaintiff never brought the marked up list to the attention of the Sheriff (SUF 33). The Sheriff does not even know if the list existed in it's marked up form in 2007 (SUF 33).

The undisputed facts establish that Plaintiff's allegations regarding gender discrimination, retaliation, and /or hostile work environment, are either false, or not supported by the facts. Accordingly, summary judgment must be entered on behalf of the Defendants, and against Plaintiff.

WHEREFORE, for the foregoing reasons, for the reasons set forth in Defendants' Motion for Summary Judgment, and based upon the facts presented in Defendants' Rule 56.1(a)(3) Statement of Uncontested Facts, the Defendants, THE COUNTY OF DUPAGE and JOHN ZARUBA, in his official capacity as DuPage County Sheriff, respectfully request this Court to enter summary judgment in their favor and against Plaintiff as to Counts I, II, and III of Plaintiff's Complaint

**D.      There Is No Evidence of Any 'Political Fallout" and No Evidence That Defendants Violated Plaintiff's Right to Freedom of Association, Accordingly, Defendants Are Entitled To Judgment as a Matter of Law**

In Count IV, Plaintiff claims that in 1998, there was a 'political fallout' between her husband, who at one time was Mayor of West Chicago, and John Zaruba, the Sheriff of DuPage County (Complaint ¶45). Plaintiff claims that Defendant's violated her First Amendment right to freedom of association due to this alleged 'political fallout'. Plaintiff claims that she was 'passed over' for promotion on the 2006 list, testifying that she believed the reason for being 'passed over' "was political, other than that I have no explanation why" (SUF 36). However, Plaintiff has presented no evidence of any 'political fallout", and, in fact, the evidence presented establishes that there was no 'political fallout.' The evidence presented establishes that there was no violation of Plaintiff's right to freedom of association. In addition, as argued previously, with regard to any claim against Defendant, the County of DuPage, Plaintiff admitted that she can not identify any wrongful acts by the County of DuPage (SUF 41). Accordingly, summary judgment should be entered in favor of Defendants as to Count IV of Plaintiff's Complaint

Plaintiff's husband was Mayor of West Chicago from 1993 through 2001 (SUF 38). Despite Plaintiff's allegation that she was politically involved in her husband's campaign and

tenure as mayor (Complaint ¶50), Plaintiff testified that she tried to stay far out of politics and West Chicago business (SUF 38).

Plaintiff alleges (Complaint ¶45) and Defendants deny (Answer ¶45) that "[i]n 1998, a political fallout occurred between Plaintiff's husband, the Mayor of West Chicago and John Zaruba, the DuPage County Sheriff" regarding the Sheriff's opening of a 'boot camp' or 'SWAP camp' in West Chicago (SUF 37). Plaintiff alleges, and Defendants deny, that there was a delay in the opening of the camp and that the Sheriff was upset about the alleged delay (SUF 37). Contrary to Plaintiff's allegations, Plaintiff's husband, the former Mayor of West Chicago, testified that there was no delay in the opening of the Sheriff's camp in West Chicago (SUF 37). Contrary to Plaintiff's allegations, Plaintiff's husband testified that he does not know if the Sheriff was upset or not regarding the camp (SUF 39). Plaintiff herself has never had a conversation with the Sheriff about the camp (SUF 39). In fact, Plaintiff has 'never actually had a full conversation with the Sheriff besides maybe a hi, how are you in passing…" (Plaintiff's dep p. 23). Plaintiff's allegations that there was a delay in the opening of the 'boot camp', and that the Sheriff was upset about the alleged delay, appear to be based upon pure speculation and conjecture. The facts establish that Plaintiff's allegations are actually false. The facts establish that there was no 'political fallout' between the Plaintiff's husband and John Zaruba, the Sheriff of DuPage County.

Plaintiff testified that she believed her husband had personal conversations and 'arguments' about the 'boot camp' with Sheriff Zaruba (Plaintiff's dep. pp.16,20-21) However, Plaintiff's husband testified: that he never had a conversation with the Sheriff about the camp (SUF 39); that he never received any correspondence from the Sheriff about the camp (SUF 39); that he doesn't know if he spoke to any Sheriff's representatives about the camp (SUF 39); and that he

does not know if the Sheriff was upset or not regarding the camp (SUF 39). Additionally, Plaintiff's husband never had any conversations with the Sheriff about Plaintiff or Plaintiff's assignments (SUF 39).

The Sheriff testified that he did not have any dealings with Plaintiff's husband when Plaintiff's husband was Mayor of West Chicago (SUF 40). The Sheriff further testified that he had no interaction with Plaintiff's husband, the Mayor of West Chicago, relative to his work camp (SUF 40).

Plaintiff's claims of a violation of her right to freedom of association are premised upon a non-existent 'political fallout' and her alleged "political involvement in her husband's campaign and tenure as Mayor of West Chicago". However, the undisputed evidence establishes that Plaintiff's allegations about a 'political fallout' between her husband and the Sheriff of DuPage County regarding a 'boot camp' are false. There is no evidence to establish that a 'political fallout' occurred between Plaintiff's husband and the Sheriff of DuPage County. Further, with regard to Plaintiff's alleged "political involvement in her husband's campaign and tenure as Mayor of West Chicago"; Plaintiff admitted that she had little involvement in politics and little involvement in her husband's business with the City of West Chicago. With absolutely no evidence of any 'political fallout', and Plaintiff's admission that she tried to stay far out of politics and West Chicago business (SUF 38), there is no evidence to establish that "Plaintiff's political association was a substantial motivating factor in" her failure to be promoted. Accordingly, Plaintiff's Section 1983 claim alleging a violation of her right to freedom of association must fail.

WHEREFORE, for the foregoing reasons, for the reasons set forth in Defendants' Motion for Summary Judgment, and based upon the facts presented in Defendants' Rule 56.1(a)(3)

Statement of Uncontested Facts, the Defendants, THE COUNTY OF DUPAGE and JOHN

ZARUBA, in his official capacity as DuPage County Sheriff, respectfully request this Court to

enter summary judgment in their favor and against Plaintiff as to Count IV of Plaintiff's

Complaint.

                                         Respectfully submitted,

                                         JOSEPH E. BIRKETT
                                         DuPage County State's Attorney

JOSEPH E. BIRKETT                      By: s/PAUL F. BRUCKNER
DuPage County State's Attorney              PAUL F. BRUCKNER
By: Paul F. Bruckner, A.S.A.               Assistant State's Attorney
Attorney No. 6206660
503 N. County Farm Road
Wheaton, Illinois 60187
630/407-8200
Paul.Bruckner@dupageco.org

## CERTIFICATE OF SERVICE

**TO:**   Ms. Carrie Linden
Mr. John C. Kreamer
BEST, VANDERLAAN & HARRINGTON
400 East Diehl Road, Suite 280
Naperville, Illinois 60563-1352

Adam Haussermann
BEST, VANDERLAAN & HARRINGTON
25 East Washington, #210
Chicago, IL 60602

The undersigned being first duly sworn upon oath states that:

On the 30th day of June, 2011, I served a copy of DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT, according to Fed.R.Civ.P. 5(a,), by e-filing a copy to the above-referenced individuals.

s/PAUL F. BRUCKNER
Assistant State's Attorney

w\pfb\Lakics msj memo law